OTILIO SANDOVAL, Plaintiff and Appellant, *v.* JACOBO SIMONET, Defendant and Appellee.

No. 8644. Argued June 4, 1943.—Decided July 21, 1943.

Mr. Justice Todd, Jr., delivered the opinion of the court.

In his original complaint in this case Otilio Sandoval sued John Doe on December 8, 1939, as holder of three mortgage notes payable to bearer for the sums of $8,000, $5,000, and $4,000 which the latter had executed in favor of the plaintiff on May 12, 1937, and alleged in the fourth and fifth averments as follows:

"IV. That on the first days of the month of November 1939, the plaintiff looked for the aforesaid notes among his personal documents in order to cancel them after payment had been made and they had been returned by the bank and that notwithstanding all his efforts in the search therefor he has been unable to find them and considers them lost.

"V. That plaintiff has not delivered, assigned, endorsed, or in any way conveyed to any person said mortgage notes described in the first averment of the complaint."

He prayed for judgment declaring null and void said obligations and ordering the cancellation of the lien recorded in the Registry of Property on several properties belonging to him. After the edicts had been published summoning the alleged holder of the notes, John Doe, Jacobo Simonet appeared and alleged that he was the owner and sole holder of the promissory notes because plaintiff had delivered them to him by virtue of some obligations contracted with him.

The lower court ordered the plaintiff to amend his complaint by substituting Jacobo Simonet as defendant and by making the proper allegations. Plaintiff amended his com-

plaint and denied therein having entered into business with the defendant in regard to those promissory notes or having ever delivered or given them as security, and alleged:

"5. That the plaintiff has been married to defendant's sister since 1934; that in April 1937, the defendant (*sic*) went to San Juan and was confined to the Auxilio Mutuo Hospital where she gave birth to the youngest child had in their marriage; that she had remained against plaintiff's will with her parents in Santurce; that plaintiff visited her for some time, once or twice a week, staying overnight during the week ends, until his wife told him that he should not visit her again there.

"6. That upon recollecting the exact dates, places, and persons related with the misplacement of said obligations, he alleges that about the year 1938 when he paid the Royal Bank of Canada of San Juan a loan which he had made from said bank with the collateral security of said obligations, the same were returned to him; that plaintiff took them with him to the house where his wife lived with her parents, defendant in this case, and upon informing his wife that he had paid the loan to the bank and collected the notes, she asked him not to take them to Manatí lest he might lose them; that she volunteered to keep them for him and offered to return them whenever he wished; that subsequently when he asked his wife to return those documents she denied having received them and refused to deliver them.

"7. That plaintiff and his wife, Sylvia Simonet, have lived separate since the day referred to in the fifth averment of this complaint and since that date his wife has lived in the same house as her brother, defendant herein.

"8. That there is a divorce suit pending between plaintiff and his wife wherein this Honorable Court rendered judgment in favor of plaintiff, Sylvia Simonet, from which judgment defendant Otilio Sandoval, plaintiff herein, appealed.

"9. That defendant and his aforesaid wife, have agreed to deprive plaintiff of the possession of those promissory notes in order to prejudice his business and deprive him of the free administration of his properties."

The defendant admitted some of these facts, denied others in his answer and also alleged:

"That plaintiff deserted his wife Sylvia Simonet and his children, having agreed, at the request of the defendant, that the latter should support them during the divorce suit and as security for these disbursements plaintiff agreed to deliver and willingly delivered to the defendant the mortgage notes involved in this action and that the defendant in consideration of this transaction has been supporting plaintiff's wife and their children and has been in charge of all their expenses from 1937 to the present time, without defendant having at any time made any payment in whole or in part."

The lower court rendered judgment dismissing the complaint and plaintiff took the present appeal wherein he alleges that the lower court erred in refusing to order the return of the promissory notes held by defendant, despite the fact that the latter failed to prove that he held them, provisionally or permanently, by virtue of any valid conveyance from the owner thereof, appellant herein, and that the court abused its discretion in imposing the payment of attorney's fees on the plaintiff.

■ Although the appellant has not made an assignment of error specifically imputing passion, prejudice, or partiality to the lower court, upon discussing the first error he almost exclusively bases the same on the allegation that the words used by the trial judge in his opinion show that he acted with passion and prejudice. In our opinion, this is not the best practice (cf. *Colón* v. *Government of the Capital*, decided May 18, 1943, *ante*, p. 24), inasmuch as the error assigned involves the determination of whether the legal conclusion reached by the lower court is supported by the evidence. If an appellant wishes to charge passion, prejudice, or partiality, he should do so by specifically assigning an error to that effect and, moreover, there should be ground or justification in the record to support the same. *Colón* v. *Government of the Capital, supra.*

■ At the hearing of the case the only witnesses were the plaintiff and the defendant and the lower court believed

defendant's testimony and decided the conflict in the evidence in his favor, thus:

".... But defendant's theory conforms better to the circumstances surrounding the relations between Sandoval, his wife, and her family; and besides, the court is convinced that during the later years, at least since the divorce suit, Sandoval has not contributed anything to the support of his wife and children.

"If there should exist a fraudulent intent or combination, the defendant could have alleged that Sandoval assigned the notes for value received and he could have even conveyed them to a third person. The position taken by him shows that he only wishes plaintiff to pay the disbursements made by him for the support of his sister."

That the lower court wanted to do justice to the plaintiff is shown by the fact that in its judgment, even though it dismissed the complaint, it stated that: "This judgment does not mean that the defendant may assign or encumber the promissory notes described in the complaint as if he were the owner, so long as they are not adjudicated by the court, except with plaintiff's permission."

The only legal question raised by appellant in his brief is that conceding that the promissory notes were given by the defendant as pledge to the plaintiff: "One of the essential requisites of the contracts of pledge is that they be constituted to secure the performance of an obligation. But of course it should be a valid obligation." And he argues that the obligation in this case may not be considered valid because it was on condition that the defendant should support plaintiff's wife and children during the pendency of the divorce suit because this is contrary to §1069 of the Civil Code which provides:

"Section 1069.—Impossible conditions, those contrary to morality, and those forbidden by law, shall annul the obligation depending upon them.

"The condition of not doing a thing which is impossible is considered as not imposed."

In our opinion appellant is wrong. The condition in this case for the return of the promissory notes was not, as alleged by appellant, that "the husband should obtain a divorce from his wife," which would be contrary to morality, but the condition was to secure the payment of "the support of his children and his wife (plaintiff's) and all the expenses which he should incur during the pendency of the suit (*sic*) of divorce which the wife had brought against him" as alleged by defendant. There is nothing illicit or against good morals in the fact that a husband should wish to secure the expenses that he is bound to pay while the divorce suit is pending. There is nothing in the evidence to justify appellant's conclusion that the security was given on condition that one of the spouses should obtain the divorce.

Likewise §1078 of the Civil Code, invoked by appellant is inapplicable, in so far as it provides that "A day certain is understood to be one which must necessarily arrive, even though its date be unknown," as construed by appellant, that is, when he alleges that "it may not be said that a day shall come when Sylvia Simonet and Otilio Sandoval will be divorced." However, it is applicable to the situation of facts that the lower court found proved, that is, that the security was given during the pendency of the divorce suit. It is obvious that the day when said action is terminated, if it has not been already terminated, must necessarily come, even though at the time of executing the obligation the date was unknown. Needless to say that one of the modes of terminating said action is by the reconciliation of the parties, as alleged by appellant himself.

█ The first error is nonexistent. And so is the second, since the imposition of attorney's fees is a matter which rests in the sound discretion of the lower court and we are not convinced that in this case it abused such discretion.

The judgment appealed from is affirmed.

Mr. Chief Justice Del Toro and Mr. Justice Travieso did not participate herein.